Per Curiam.

It should he noted that this cause is not one which requires the concurrence of at least all hut one of the judges of this court since it does not involve the constitutionality of a law but rather the application of a section of the Constitution with reference to an action of the General Assembly purporting to submit a constitutional amendment to the electors of the state.
It should be noted further that we would have a different question before us if timely action had not been taken in the present cause and the purported amendment to the Constitution had been submitted to the voters and ratified by them before the legality of such action was challenged.
Section 1, Article XVI of the Constitution, reads as follows:
“Either branch of the General Asembly may propose amendments to this Constitution; and, if the same shall be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and shall be submitted to the electors, for their approval or rejection, on a separate ballot without party designation of any kind, at either a special or a general election as the General Assembly may prescribe. Such proposed amendments shall he published once a week for five consecutive weeks preceding such election, in at least one newspaper in each county of the state, where a newspaper is published. If the majority of the electors voting on the same shall adopt such amendments the same shall become a part of the Constitution. *4 When more than one amendment shall be submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment, separately.”
As we have said, the House of Representatives on May 14, 1957, adopted a joint resolution submitting an amendment. A Senate committee later recommended certain amendments, substantially changing the resolution of the House, and thereafter the Senate voted upon the adoption of the joint resolution but entered upon its journal the original House joint resolution with the yeas and nays of the vote. The Senate journal recites, “The question being on the adoption of the joint resolution reading as follows,” and thereafter recites the original resolution as submitted by the House.
It is true that the Senate journal designated the original House resolution, as spread thereon, as amended House resolution, and that the House journal shows an acceptance by the House of the Senate amendments, but, nevertheless, the journal of the Senate unqualifiedly shows that the wording of the resolution upon which it voted, with the yeas and nays of the vote, was in the language of the original House resolution.
Section 1, Article XVI of the Constitution, contains a mandatory provision that any proposed amendment to the Constitution shall be entered on the journals, with the yeas and nays, and assuredly the amendment proposed to be submitted by the Secretary of State to the electors is not the one which was entered on the journal of the Senate.
The defendant insists, however, that, since the Speaker of the House and the President of the Senate signed a copy designated Amended House Joint Resolution No. 34, containing the amendments suggested by the Senate committee, although the Senate had spread House Joint Resolution No. 34, without such amendments, upon its journal and showed the yeas and nays of the vote, the court was powerless to dispute the document which the two presiding officers had signed.
Reliance is placed upon the case of Ritzman v. Campbell, 93 Ohio St., 246, 112 N. E., 591, L. R. A. 1916E, 1251, where it was held by this court that a duly enrolled bill, although publicly signed by the presiding officer of each house, in the presence of the house over which he presides, while the same is in session and capable of doing business, and afterward approved *5 by the Governor and filed by him with the Secretary of State, as provided in Article II of the Constitution, may be impeached on the ground that it had not received a constitutional majority vote of the members of both branches of the General Assembly, and upon this question the legislative journals must provide the appropriate as well as the conclusive evidence. Nevertheless, such enrolled bill, so authenticated, is conclusive upon the courts as to the contents thereof, since the attestation of the presiding officers of the General Assembly is a solemn declaration of a co-ordinate branch of the state government that the bill as enrolled was duly enacted by the General Assembly.
If the proposal to amend the Constitution should be considered as a bill enacted by the General Assembly, the Ritsman case would be dispositive of the question before us, but the majority of this court is of the opinion that a proposal to amend the Constitution is not an inherent legislative prerogative. The action of the General Assembly in connection therewith is the exercise of a special power granted to the General Assembly, which must be strictly complied with.
As stated in 11 American Jurisprudence, 633, Section 28:
“The poAver of the Legislature to initiate changes in the existing organic laAv is a delegated power and one which is generally to be strictly construed under the limitations imposed by the authority by which it has been conferred. In submitting propositions for the amendment of the Constitution, the Legislature is not exercising its legislative poAver or any sovereignty of the people that has been intrusted to it, but is merely acting under a limited power which is conferred upon it by the people and Avhich might AAÚth equal propriety have been conferred upon either house, the Governor, a special commision, or any other body or tribunal. * * *
“It is usually held that a constitutional provision as to amending the Constitution, otherAvise than by a convention, is mandatory, and not directory. The reason for such a construction is obvious. The Constitution is the organic and fundamental law, and to permit a change in it Avithout a strict adherence to the rules therein laid down Avould be a step in the direction of the destruction of the stability of the government.”
In 16 Corpus Juris Secundum, 49, Section 9, it is stated:
*6 “It is generally necessary that there be due compliance on the part of the Legislature with all constitutional requirements, as preliminary to the submission to the people for ratification of a proposed constitutional amendment, including such formal steps as the reading of the proposed amendment before each chamber, the entry of such amendments on the journal with the yeas and nays thereon, the approval by the required number of votes, usually more than a mere majority, and ratification by a succeeding Legislature where necessary. An omission of a required step cannot be overlooked because of any inconvenience that may result through failure to adopt the proposed amendment * * *.”
See Switzer v. State, ex rel. Silvey, 103 Ohio St., 306, 133 N. E., 552, and State, ex rel. Greenlund, v. Fulton, Secy. of State, 99 Ohio St., 168, 124 N. E., 172.
Since Section 1, Article XVI of the Constitution, provides that a proposed amendment shall be entered upon the journal of each house, with the yeas and nays, and since, in the instant case, the amendment, which was entered upon the journal of the Senate, with the yeas and nays, and apparently voted on by that body, is entirely different from the amendment proposed to be submitted to the people, it cannot be said that the provisions of Section 1, Article XVI, have been complied with.
It is contended by the defendant that the provision that the proposed amendment shall be entered on the journals is satisfied by a mere reference and not the actual spreading of the proposed amendment upon the journals. However, this court has defined the words, “entered on the journal.”
As to the law, which requires all judgments and orders of a court to be “entered on the journal” of the court, this court has said that such a provision requires an entry of the entire judgment or order upon the journal, and that mere reference to a judgment or order is insufficient. Coe v. Erb, 59 Ohio St., 259, 52 N. E., 640, 69 Am. St. Rep., 764; Fairchild v. Lake Shore Electric Ry. Co., 101 Ohio St., 261, 128 N. E., 168; State, ex rel. Chapman, v. Urschel, 104 Ohio St., 172, 135 N. E., 630; Will v. McCoy, 135 Ohio St., 241, 20 N. E. (2d), 371; Krasny v. Metropolitan Life Ins. Co., 143 Ohio St., 284, 54 N. E. (2d), 952; and Brown, Admx., v. L. A. Wells Construction Co., 143 Ohio St., 580, 56 N. E. (2d), 451.
*7 It seems to us that the language, “such proposed amendments shall he entered on the journals, with the yeas and nays,” clearly means that they must be spread in full upon such journals.
Since the proposed amendment which was spread in full upon the Senate journal, and which was apparently favorably voted on by the Senate, is radically different from the amendment proposed to be submitted to the electors, we are of the opinion that the Common Pleas Court was correct in enjoining the defendant from taking any action with regard to the amendment which he proposes to submit to the electorate at the coming November election.
In view of what we have said, it is unnecessary to consider the other errors assigned by the plaintiff.
The judgment of the Court of Appeals is reversed and the cause remanded to that court with instructions to issue the injunction as prayed for.
Cause No. 35369 is an action for a writ of mandamus instituted in the Court of Appeals, which, if allowed, would result in the submission to the electors at the coming November election of the proposed amendment as embodied in the original House Joint Resolution No. 34 as adopted by the House on May 14, 1957. However, to justify the allowance of a writ of mandamus, the right to it must he clear, and certainly, in view of the confused state of the proceedings in the House and Senate with reference to the original House resolution, it can hardly be said that there is a clear right to a writ in cause No. 35369.
The judgment of the Court of Appeals, dismissing the petition and rendering judgment for the respondent, is, therefore, affirmed.

Judgment reversed in cause No. 35352.

Judgment affirmed in cause No. 35369.

Zimmerman, Stewart, Bell and Taet, JJ., concur.
Weygandt, C. J., and Herbert, J., concur in cause No. 35369 and dissent in cause No. 35352.
Matthias, J., not participating.
*8 Taft, J., concurring. As indicated in paragraph one of the syllabus of Ritsman v. Campbell, 93 Ohio St., 246, 112 N. E., 591, L. R. A. 3936E, 3251, “a duly enrolled bill * * * may be impeached on the ground that it has not received a constitutional majority of the members elect of both branches of the General Assembly, and upon this question the legislative journals must provide * * * the conclusive evidence.” Undoubtedly, the reason for this rule of law is that our Constitution mandatorily requires that “each house shall keep a correct journal of its proceedings, which shall be published,” that “on the passage of every bill, in either house, the vote shall be taken by yeas and nays, and entered upon the journal,” and that “no law shall be passed, in either house, without the concurrence of a majority of all the members elected thereto.” Section 9 of Article II of the Constitution. If those mandatory requirements are complied with, there never should be any necessity to look at anything other than the published journals of the House and Senate to determine whether a particular bill received the vote required for its passage.
On the other hand, there is no constitutional requirement that the words of a proposed bill should be entered on the journal of either house. Hence, an examination of the legislative journals will ordinarily not disclose the words of a bill and it is necessary to look elsewhere for that information. Obviously, the enrolled bill will usually be the most reliable source of that information and hence, as indicated in paragraph two of the syllabus of the Ritsman ease, “such enrolled bill” when duly authenticated as required by our Constitution (Section 17 of Article II) “is conclusive * * * as to the contents thereof.”
Where, however, as with respect to constitutional amendments proposed by a branch of the General Assembly, our Constitution requires that such a proposed amendment “be entered on the journals” of each house “with the yeas and nays” (Section 1 of Article XYI) and further requires that “each house shall keep a correct journal of its proceedings, which shall be published” (Section 9, Article II), there should never be any need to look elsewhere to determine the words of such a proposed constitutional amendment and hence there would appear to be *9 no reason for looking to any enrolled copy of any joint resolution for that information. See State v. Kiesewetter, 45 Ohio St., 254, 259, 12 N. E., 807. The • published journals of both houses are obviously much more readily available for examination, not only by members of the General Assembly but by others, than any enrolled copy of a bill dr legislative resolution. This being so, it is more likely that any mistakes in those journals will come to the attention of members interested in eliminating them than will mistakes in the single enrolled copy of a bill or a resolution.
The dissenting opinions apparently assume that there was a mistake in recording what the Senate approved when it voted on May 28. However, unless we resort to inference, perhaps fortified by parol evidence, it may be that there was no such mistake but, instead, there was a mistake in recording in the Senate journal for May 22 the report of the Senate committee relative to House Joint Resolution No. 34 and that mistake initiated the references to Senate amendments thereof found in subsequent House and Senate journals. Apparently, when they drafted Section 1 of Article XVI and Section 9 of Article II, the framers of our Constitution wisely desired to avoid any resort to inference or parol evidence with regard to the wording of such proposed constitutional amendments.
As to case No. 35369, the journal of the House clearly indicates that, when it concurred in the supposed Senate amendments, it necessarily rescinded its agreement to the proposed constitutional amendment in the form originally approved by it.